Good morning. May it please the Court, my name is Bennett Cohen. I am appearing on behalf of Plaintiff and Appellant Susan Beach. I would like to reserve half my time, if I may, for rebuttal. This appeal arises out of the multiple and flagrant violations by Appellee Liberty Life Assurance Co. of the most basic rule and most basic principle governing ERISA claims set forth in the ERISA statute itself, section 1133. That is, that when a plan denies a claim, it must state all of the specific reasons for its denial in order to afford the claimant a full and fair review outside the court system at the administrative level. This Court has given additional meaning and logical enforcement to that rule and that principle in this Court's Harlech v. Blue Shield case, in which this Court held that if a plan or insurance company, and I use those terms interchangeably, fails to state a reason, a specific reason for its denial during the administrative process, it forfeits that reason and cannot raise it in its dispositive motion. And the reason is, and this Court and other circuits have said, that it is fundamentally unfair for an insurance company to fail to state a reason at the time of its denial when the claimant still has a chance to introduce evidence to show that that reason is highly misleading or taking facts out of context or simply untrue, and then to raise it in the dispositive motion long after  In this case, due to the, I say respectfully, the District Court's deeply flawed formulation of the NOVA review, the District Court allowed, by my count, virtually all of the 15 new reasons that Liberty advanced in its dispositive motion. Reasons that included multiple and very specific factual assertions why my client, Susan Beach, was not credible in her description of symptoms. Well, that gets to the nub of the case, which is, is the rule that you can't give a, rely on a new policy provision? Or is the rule you can't rely on new facts in support of your, the policy reason on which you rely? And I think it's possible to read cases both ways, so give me the justification for saying, the District Court said, look, you get, this, the rule is limited to essentially policy exclusions and not written, not evidence in support of that. So yes, Your Honor. First, the ERISA statute and the implementing regulation specifically referenced in the ERISA statute says that the plan must state all specific reasons. It doesn't say all specific exclusions or all explicit limitations or all policy provisions. Just like courts have found that this court in the Montour case, that the failure to specifically state that a functional capacity evaluation was needed, was a violation of the ERISA requirement of adequate notice. In Saloma, this case said that the plan must or should have stated what type of X-ray was needed. Judge Samuel Conte in the Prado v. Allied case said that the plan committed a violation, a procedural violation, which in fact entered into his ruling that the denial was arbitrary and capricious, by stating during the administrative process only that the evidence showed, failed to show a physical impairment and then raising credibility of the claimant for the very first time in the denial of its appeal, which, at which time the claimant, of course, has no way to introduce evidence to counter that claim. So what evidence would you have put on in this case? I mean, you have the medical records. They're part of the fixed record in the case. It would come in in any event. What would have been different in your presentation? If all of those reasons were stated initially? Yes. Well, I could give the Court a few examples. There's many. One of those would be, for the first time, Liberty stated that Susan Beach took a vacation, and this somehow indicates she's capable of work. Well, without waiving our objections to those reasons, her vacation, we would show, was a visit to Florida to take care of her mother suffering from congestive heart failure in July of 2014, and her mother at that time could have submitted a very compelling declaration talking about her own daughter's difficulties, the profound fatigue, staying in her room, not helping like she could have. When the Rule 52 motions were filed in April of 2017, three months later, her mother went into a hospice, and that type of declaration would have been unavailable. Wasn't the evidence of the trip to Florida in the administrative record? There was a mention of a trip to Florida, but what Liberty did with it, it's — it wasn't stated as a reason for the denial. Had it been stated as a — you know, the administrative record's 2,700 pages. There's at least 2,700 facts in there, you know, a new fact on every page. The point is that if you raise that as a reason for the denial, we could present evidence, and there's no substitute for evidence to counter the argument expressed or implied that spun from that fact. Another I could give the Court. Roberts. But if the trip to Florida was in there to begin with, wasn't it apparent at that time that this could be an issue, especially given the circumstances of what the plaintiff, what Ms. Beach was claiming, that the insurance company could say, well, if she could go to Florida, she can work? I mean, wasn't that kind of obvious at the time, so it wasn't an incumbent on Ms. Beach at that time to say, well, actually, I went to Florida because my mother was having congestive heart failure and I ended up not being much of a help because of my disabilities? No, respectfully, Your Honor. A 2,700-page record, there's many, many other facts that could have been raised. I mean, they could mine that administrative record for 2,700 other facts. The ability not to work, the ability to refrain from work doesn't prove the ability to work. And the fact that somebody like all of us have maybe had to say in no way shows an ability to work had they stated it. And that's what the ERISA regulation and the ERISA statute says. We're not, we can't guess at what they're going to do. If they could state it in the Rule 52 motion, they could state it in their denial letter. My time, my half of my time is up, unless the Court has other questions. Roberts I interrupted your answer to Chief Judge Thomas. You were talking about what else you would have done and what other evidence. And you talked about the trip to Florida. Is there some other one that you'd like to reference? Well, quickly, I would say that, very quickly, Liberty makes a big deal of the treating doctor, Balinky, stating that, quote, there's no reason for disability. And the file also says you're not disabled because you work limited hours. What we would do, if they had raised that, which they never did, is contact her to just make it absolutely clear that her understanding of the term total disability was the complete inability to work, which is not, which is not the law, not the policy provision. One other, say quickly, the, Liberty makes a big deal, it's alleging that Susan Beach misrepresented facts to her that she always had a good faith belief she would be terminated because of her, because of her, the difficulties, the disruption, the missed time, people having to cover for her. She was the lead person in that lunchroom. And when she was gone, it was disruptive. What we would do that we couldn't do is go to the people who actually changed the structure of that to hire an outside contractor to ask them, why did you do this? And they may say, you know, we had just too many interruptions. We had to get somebody else. Now, that's exactly the type of thing that we would have done if these were raised. And I'm down to five minutes. I don't reserve. Thank you. May it please the Court. My name is Susan Handelman, and I am appearing on behalf of the Plan Administrator of Liberty. I guess in light of the statement started, that my opponent started off with, that there was a deeply flawed de novo review in this case, probably the best place to start is with the notion of what is a proper de novo review under the law that applies to ERISA claims. And the Court well knows this is a specialized territory. The court in Kearney, which was an embankment court of this, an embankment panel of this court, said that in ERISA, trial de novo, de novo review, is not a proper de novo review. It's not a proper de novo review. It's a trial on the administrative record. The trial court under Muniz sits as trier of fact, and that is exactly what the trial judge in this case reflected in her order. The trial judge is required in a trial de novo, a de novo review, to determine whether the claimant is ordered to determine this in the first instance, whether the claimant is disabled under the policy, based on the whole administrative record, is required to determine the persuasiveness of evidence. Well, that's all. I think that's absolutely correct. And the district court judge here issued a very extensive ruling. But, you know, the district courts are usually guided by the arguments that counsel make. Exactly. Right? Exactly. So as I understand, you know, what was in play was whether she was capable of working in any occupation, right? That was consistent throughout. Exactly. The same. But as I understand counsel's argument, it's that along, when you got to district court, you made specific arguments that they hadn't seen, were not contained in the notice of denial. Is that right? That's the argument that the opponent is making. Well, did you do that? Well, let me talk about that. At a Rule 52 motion, the court has the job, as I was just explaining, of determining credibility, evaluating all the facts, as my opponent points out, and a vast record, 2,700, 2,800 pages. The parties, the judge, the plaintiffs, the jury, the jury, the lawyers for the parties in a Rule 52 proceeding submit briefs. In this case, there were six briefs. Each side made its own motion for judgment under Rule 52. And each side in its briefs, the lawyers were acting as advocates for their clients, showing what was in the record, what evidentiary facts exist. Both sides did this. To assist the court in making the credibility determinations, making the determination whether the individual claimant was disabled under the terms of the policy, and that is essentially the arguments of counsel. Had it been a live trial, it would have been closing arguments or opening statements of counsel. What does the evidence show? And there is not a single bit of authority in the Ninth Circuit or elsewhere that we could find that says that when the trial lawyer is submitting a brief, his arguments on to assist the court in sorting out all of the issues that the court has to sort out on a Rule 52 motion, that there is any preclusion from the court stating, using the trial record to establish what it is that is in their client's interest. You would agree, though, that your client could not have relied on another exclusion? Exactly. You were confined to the exclusion, the reason you gave. Now, the question is, as I've said, if you're opposing counsel, how does Harlech and how does the ERISA statute confine the statement of reasons? Their view is you're stuck with the evidence you relied on in the administrative proceeding because that was the fair notice that they needed to respond. How do we comport with the fair notice requirement if you don't tell them during the administrative proceeding and then they are — they didn't present the evidence they would have liked to present? Well, I think that we have to separate, first of all, the two — the various situations here. Under a body, I'll use some of the case authority that was cited by my opponents and that the Court just referred to, Harlech, for example, the claimant was denied benefits. It's a health insurance case based on the fact that he was treated in a residential treatment facility. Residential treatment facilities are not covered. However, after the administrative record was closed, in fact, after oral argument, in the Ninth Circuit Court of Appeals, when the Ninth Circuit asked for further briefing, all of a sudden the health care plan, the plan administrator, started relying on a different provision, namely that his treatment was not medically necessary. And that's permitted. Right. We're familiar with the case. I mean, I think that's — that rule is pretty plain. It's very — The question is — the question is what's the scope of the rule? The scope of the rule — And your position is it's simply confined to the stated reason, the exclusion. That is how — it isn't — what my own view of it is not important, but what the courts have done with it, whether it's Harlech, whether it's a body, whether it's a person, that is — that's what's forbidden. Now — Can we look at the regulation? Yes. Which is Section 2560.503-1G1. Yes. Only an ERISA regulation could have that name. It gives three things. It talks about three things. One is the specific reason or reasons for the adverse determination, and you're saying that that refers to the policy provision. But looking at the — that may make sense. If we were drafting a regulation, we might say that the specific reason or reason is a specific plan provision. But then Romanet 2 actually says reference to the specific plan provisions on which the determination is based. So given that that's Romanet 2, doesn't that specific reason or reasons for the adverse determination has to be something at a higher level of specificity than the specific plan provision? And I think that the situation in our case will provide an answer precisely to that question. In this case, repeatedly, in all of the various denial correspondence to the claimant, the provision is — which is number two under that particular regulation — the plan provision is identified as the definition of disability or disabled. And it's quite a long definition, and it has two parts or multiple parts. Actually, it has one that specifically provides — pertains to pilots. But it also has an own-oc and an any-oc part. It's a long definition. But that definition is the policy provision, and it is verbatim included in the correspondence denying claims. The reason for denial specifies what part of that is not satisfied by the claimant. And in each of the letters to the claimant, it specifies that the claimant can, in fact, functionally perform occupations and therefore does not meet the definition of the any-oc — any-occupation disability. So the plan provision is verbatim, and what the conclusion of the plan administrator was is separately stated. What part of that provision is at issue here, and why doesn't — why doesn't she meet it? Because she can't perform occupations, which, in fact, in the final denial letter are identified specifically. So if we're going to — if we're going to match up the rationale with the regulation, Romanet 2 requires reference to the specific plan provisions on which the determination is based, and you're saying that that's the definition of disability. Romanet 1 is the specific reason or reasons for the adverse determination, and what you're saying is that that's the definition of any occupation, right? And the determination has — that has been made that she has the functional capacity to perform occupations. Then what do we do with Romanet 3? A description of any additional material or information necessary for the claimant to perfect a claim and an explanation of why such material or information is necessary. What does that refer to? That refers to situations where, for example, the — it is unclear whether the claimant provided her claim on time. And if you — the claim administrator can say, if you have time stamp materials that will show you were — your claim was on time, send them to us. We don't have them. In this case, for months — and in fact, in most of these any-occupation disability cases, and the court is most likely aware that there is a — these are the provisions that acquire the most scrutiny by the court and by the claimant — is that the claimant and the — and the plan correspond and communicate directly. There is an obligation in a claim situation for there to be communications between the plan and the claimant. And in this case, there were. We asked the claimant — But there were no communications about the Florida vacation. Not about the Florida vacation. There were no communications about the fact that the — they disbelieved her testimony or that they discounted the testimony of the physician because your client or their client had allegedly lied to the physician. Right? So my concern is this. It's all about fair notice. We're just talking about the medical records. One can make arguments based on the relative weight on that. But when the district court goes into credibility, and credibility has not been placed at issue previously, and they had no opportunity to defend against credibility, it's hard for me to see why that isn't a different reason than given. So, for example, and that's why I asked the question of opposing counsel, what would you put in? And the answer was, well, we would explain the Florida vacation. And they didn't have the opportunity to do that. No, I understand the question, Your Honor. And honestly, the assistance to the court in determining credibility had never before been at issue. In other words — Well, that's precisely my point. Yeah, but it's the nature of de novo review. But you made it an issue, right? No, it's the court — Did you argue that she was not — that the doctor was not credible or that she was not credible? The — In your briefs to the district court? We — both sides. Well, my question is, did you, in your briefs to the district court, raise credibility? The doctors, her, like her trip to Florida, did you raise that? We did, and all sides made their points about what was credible and what was not. And that is — But you were, at this point, confined to the administrative record. And at this point, confined to the administrative record. I will also point out one other thing, and this is important. When we're — what is the usual import of whether or not the administrator followed the statute, whether the administrator gave a reason, whether the administrator pointed out a plan provision. And the typical import of scrutinizing whether or not the regulations on claim handling were met is in the nature of determining how much discretion — the administrator exercised discretion. And the trial court is trying to figure out how much weight, how much deference to give to the administrator's discretion. Those are — that's the context in which these claim handling regulations are often come up in ERISA cases. And if there was a mishandling, a reason not given, or a plan provision not properly brought to the claimant's attention, the effect of that is to turn to de novo review, to not give the administrator's determination any deference. And in this case, we have de novo review, and we have a court charge — Well, not true de novo review. Excuse me? It's not true de novo review in the sense of an open record. Oh, exactly. It's confined. Your Honor — So let me ask you this. Let's assume that you were restricted to the reason you gave during the administrative proceeding, only that. Couldn't raise anything else. Would you still prevail or not? This case? Yeah. In this case, certainly. In this case — Go ahead. Certainly, because there's unquestionable evidence here that the court could rely upon. And remember that the question of whether the claimant is totally disabled, as defined by the policy, is a question of fact. There is reliable evidence in the file that the court was entitled to rely on that said that she was able to perform occupations, that she did not meet the definition of total disability under the any occupation standard. So had we been restricted, the answer would be yes, but it would not have been the de novo review that this court in Kearney says must take place, which is review on the administrative record, not on the specific denial letters that were provided by the administrator in the first place. Thank you, counsel. Thank you. I believe the court is correct in stating that the regulations are — demonstrate that the plan must tell the claimant what specific facts need to be shown to overcome — That's not what the regulation says. It says specific reasons. It doesn't say specific facts. Correct. It says actually the plan must provide any information and material that is necessary to perfect the claim. So what do you think they're confined to? If you are correct, hypothetically, in saying that they can't give a new — can't cite new evidence, what do you believe they're confined to on this record? Well, as Judge Conte said in the Prado case, they're certainly confined to not raising credibility. No, no, no. I'm talking about the specific reasons that we're giving. Okay. What do you think in this case? What do you think if we accept your argument and hypothetically, what are they confined to? What does this case rise or fall on? This case rests upon — or Liberty's denial rests upon its assertion that Beach, Susan Beach, does not have fibromyalgia, which it withdrew, and rests on its claim that, as stated in the denial letter, that because there's no lab report or X-ray or other, quote, objective medical evidence, she is not disabled. Now, this Court in Saloma and Jordan said that that per se is legally invalid. In fact, it's — to deny a claim on that basis would be arbitrary and capricious. That's what they're limited to because those were the only reasons stated in the denial letter. And so we, in the appeal, had two doctors state she has fibromyalgia. They did the tender point test. And they explained what the symptoms were. And they, you know, they explained why — and it's already Ninth Circuit law, but that with fibromyalgia, as with some other illnesses, there are no objective, you know, testing. There is no objective testing that can either confirm the presence of symptoms or their severity. So that's what we did. We addressed it. So would you agree in terms of evaluating the record on de novo review and leaving aside the credibility issues, could the district court rely on any medical evidence in the record? Do you mean independently look at the record? Yes. I don't believe so. Point of de novo review if you can't look at the entire medical record. I'm not talking about credibility issues, but just on the medical record to determine total disability. I believe the way ERISA's written and intended, the claimant should have a full and fair opportunity to respond to any reasons that would possibly support a denial, or at least that are asserted. And in this case — and let me just say, that is not this case. In this case, the district court adopted virtually verbatim, in fact, verbatim the reasons that Liberty stated and did not go out on its own and read the record and come up with reasons that Liberty had never stated or suggested. But I don't — I think it would be fundamentally unfair for the district court to tell us in their decision about certain reasons that the district court mined from the 2,700-page record that it believes prove the — or support the denial, because we may have compelling evidence to address that very point, and we were never given that opportunity. And don't forget, in an ERISA case, there's no discovery. There's no witnesses. Everything stops at that 180, that finite period. The record slams shut. Right. But, of course, the medical records would have come in anyway. I mean, that's — and if it's de novo review, why can't the district court look at the medical records submitted by both sides and the arguments made from the medical records and make appropriate findings? Because I believe that de novo review conceptualized in conformity with the ERISA statute and regulations means that simply the court, the district court does not defer to the insurance company's interpretation of the evidence. It does not mean that it can look at reasons that it never stated. I think that the fair adjudication is that those reasons that the district court can consider should be the ones stated. They could state 550, 500, but they should be — the record, the administrative record should be the record, the reasons that have been specifically stated and to which we have had the opportunity to present evidence to show that those reasons are baseless. Go ahead. What I hear you saying is that — it seems like the implication of your argument is that the plan's Rule 52 brief has to be a copy of its denial letter because otherwise the plan will be going beyond the reasons that it gave for denying the claim. Is that right? No. And — no, I'm not saying that, Your Honor. And if you look at — well, two things. Hypothetically, if the plan said in its denial letter the MRI doesn't show a sufficient herniation, I'm just using that as an example, the doctor may have a very extensive report explaining why it's not, you know, sufficient. There may be 20 other reasons, but no, they just have to give notice. And by the way, I just want to say one thing. In those cases that Liberty cited on the part-time issue, some of those courts dealt with whether or not — and those cases were, by the way, were under the abuse of discretion standard. They would not apply to this case, which is De Novo. Those — all of those cases that they string cite in this case — and there's no Ninth Circuit authority on the part-time issue, so Beach would not have notice of it either through Liberty or the law. It would be purely an internal standard of Liberty. And that is the type of — the part-time thing, for example, if Liberty wanted to or was insisting or denied the claim based upon the fact that Beach had to prove that she couldn't work part-time under that regulation, that they should provide any evidence or any information to help her or to enable her to perfect her claim. They should state at the time of the denial we're denying it because you didn't prove it's part-time. Then if — putting aside the validity of that, because there's no Ninth Circuit case and this Court's evaluation would be De Novo, just like the Court did in Bruce v. New York Life, where the Court looked at whether there were two reasonable interpretations. But I'm — But you would agree that certainly the medical evidence that was cited in the denial letter is fair game? There — the only medical — I'm looking at the denial and it references Dr. Zantler. It represents Dr. Polenki. It references Dr. Wong. It references Lurfield Hirschman. That's true. But in terms of — So you're saying the district court could not have considered those medical records? I believe, I'm saying this, it is fundamentally unfair under the logic of — under the logic of Harlech and other cases that for a voluminous medical file to ambush the claimant with specific reasons that have never been — for example — Well, those four or five physicians were given to you. Right. Say that again? The four or five physician records were — put you on notice as to those? But they don't put us on notice as to the specific reasons. For example, Liberty contended that Beach was not credible because she hadn't seen a rheumatologist or that she was communicating by e-mail with her doctor rather than seeing her in person. Or this other claim that she suddenly changed her description of her symptoms when she was notified of the — any occupation definition. Right. That wasn't my question. I mean, at least you have to concede that the medical reports referenced in the denial letter could form the basis of the district court's decision. I don't agree that simply referencing voluminous medical records fulfills the requirement under ERISA that a plan must tell the claimant of the specific reasons to have a, quote, full and fair review. I emphasize full. We can't guess what they're going to pull out, what they're going to mine the record for. And two and a half years later — I think we understand your position. Unfortunately, my questions have taken you over time. Well, I appreciate your questions, Your Honor. So thank you both for your arguments today. And the case just heard will be submitted for decision and will be in recess for the morning. All rise.
judges: Thomas, Paez, Feinerman